IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 19-CR-137 RB |
| | ) | |
| vs. | ) | |
| | ) | |
| **MARIO REYNOSO,** | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' NOTICE OF INTENT TO INTRODUCE EVIDENCE OF BAD ACTS UNDER RULE 404(b)

The United States provides formal notice of intent to introduce evidence of bad acts under Rule 404(b) during its case-in-chief.

**I.     Background**

In early 2018, Homeland Security Investigations (HSI) began an investigation targeting members and associates of the Barrio Azteca gang who were involved in the sale of methamphetamine in the Las Cruces, New Mexico and El Paso, Texas areas.   In March 2018, a source of information (SOI) provided information regarding this drug trafficking organization (DTO) to HSI and identified one of the associates as "Mario," last name unknown.   The SOI also directed HSI to a Facebook page, which was under the name "Mario Hernandez," and suggested that the page might belong to the suspect, although the SOI was not positive.

Shortly thereafter, the SOI provided HSI with the suspect's vehicle color, make, model, and license plate information—a gray Ford Fusion bearing license plate number KNJ-4185. When agents checked the vehicle's registration information, they learned that the vehicle was

1

registered to Defendant Mario Reynoso.   The registration check also led HSI to Defendant's driver's license photograph and residential address of 11755 Vista Del Sol, #24, El Paso, Texas. Agents then placed Defendant's photograph in a "six-pack" photo array and presented the lineup to the SOI.   The SOI positively identified the photograph of Defendant as the "Mario" about whom the SOI had provided information to the agents.

In late April or early May 2018, the SOI provided Defendant with the telephone number of an undercover agent (UC), under the guise of connecting Defendant with a potential methamphetamine buyer.   The SOI also provided agents with Mario's telephone number—91-549-2841.   On May 3, 2018, the UC received the text message, "YO," from the 915-549-2841 number.   Defendant then called the UC from this phone number, identified himself as "Mario," and discussed the quantity and quality of methamphetamine that he had to offer the UC for purchase.   Defendant did not identify the drug by name in this conversation; he merely referred to it as "fire" or a number amount, *i.e.*, "one," "two," and "three."

During calls between Defendant and the UC later that same day and on May 7, 2018, Defendant negotiated the sale of two ounces of methamphetamine to the UC for $800.   Defendant and the UC agreed to meet at the Sunland Park Casino in Sunland Park, New Mexico, on May 8, 2018, to make the sale.   HSI recorded the calls between the UC and Defendant regarding this transaction.

On the morning of May 8, 2018, Defendant spoke with the UC again by phone, confirmed that he was on his way to the casino, and told the UC that he was driving the gray Ford Fusion. Agents on surveillance were able to locate the vehicle as it entered the casino parking lot and identify Defendant from his driver's license photograph.   However, the front windows of the

vehicle were heavily tinted, as is reflected in HSI's video recording of the event.

After pulling into the parking lot, Defendant instructed the UC to enter the back seating area of Defendant's vehicle and close the door.   Once inside, the UC observed Defendant in the driver's seat and an unknown female in the front passenger's seat.   The UC confirmed that Defendant was a match for his driver's license photograph.   The UC then asked Defendant for the methamphetamine, and Defendant pointed to a Band Aid box laying on top of the center console of the vehicle.   The UC took the box, opened it, and discovered a translucent plastic bag of what appeared to be two ounces of methamphetamine.   The UC asked Defendant if there was "two," and Defendant confirmed there to be "two."   The UC proceeded to hand Defendant $800, and then Defendant told the UC that he needed to leave.   The UC exited the vehicle and Defendant drove away from the premises.   HSI video and audio recorded the event.

Approximately one hour after the exchange, the UC called Defendant, told him that he had weighed the methamphetamine, and asked why his purchase was over seven grams short of two ounces.   Defendant explained that the "ounces" he sold were only twenty-five grams each and that this was why he had offered them for the low price of $400 per ounce.   After some prompting by the UC, Defendant conceded that even by this logic, the UC's purchase was still about one gram short.   Defendant told the UC that he would make it up to the UC upon his next purchase.   HSI recorded this conversation.

The New Mexico Department of Public Safety Southern Forensic Laboratory examined and analyzed the contents of the plastic bag of suspected methamphetamine that the UC purchased from Defendant.   The laboratory confirmed that the bag contained 47.78 grams of pure methamphetamine.   However, the evidence receipt for the bag misidentifies the suspect as

"HERNANDEZ, MARIO."

On January 16, 2019, a federal grand jury returned an indictment against Defendant, charging him with Distribution of 5 Grams and More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2.

## II.   <u>Applicable Law</u>

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."   Fed. R. Evid. 404(b)(1).   Such evidence may be admissible if offered for some other purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."   Fed. R. Evid. 404(b)(2).   To admit evidence of a crime, wrong or other act under Rule 404(b), the court must determine that there exists evidence "sufficient to support a finding" that the defendant committed the act in question.   Fed. R. Evid. 104(b); *see also Huddleston v. United States*, 485 U.S. 681 (1988).

In the Tenth Circuit, courts apply the four-part test set out in *Huddleston* to determine the admissibility of 404(b) evidence:

> (1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

*United States v. Diaz*, 679 F.3d 1183, 1190 (10th Cir. 2012) (quoting *United States v. Morris*, 287 F.3d 985, 990 (10th Cir. 2002)).   The trial court is afforded considerable discretion in determining the admissibility of 404(b) evidence.   *See id.* (quotation omitted).

Additionally, the Tenth Circuit takes an inclusive—rather than exclusive—approach. *See United States v. Burgess*, 576 F.3d 1078, 1098 (10th Cir. 2009) (quoting *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)). Accordingly, evidence of other crimes or acts should be admitted "except that which tends to prove *only* criminal disposition." *Tan*, 254 F.3d at 1208 (quotation omitted) (emphasis in original).

## III.   Background of Anticipated 404(b) Evidence

### A.   Defendant's Conduct on August 22, 2018

On August 22, 2018, the Narcotics Unit of the El Paso County Sheriff's Office encountered Defendant while conducting a narcotics investigation in the parking lot of the Woodspring Suites in El Paso, Texas. The officers recognized Defendant as a current investigative target from the Barrio Azteca DTO and initiated a consensual encounter. During the encounter, Defendant allowed the officers to pat down his person, and he allowed a canine officer to sniff the exterior of the gray Ford Fusion. This consensual encounter led to the officers discovering a stack of U.S. currency in Defendant's pocket, as well as 74 grams of methamphetamine, 37.10 grams of heroin, 32.60 grams of cocaine, 0.76 ounces of marijuana, drug paraphernalia, and a digital scale inside of his vehicle. Defendant was arrested, but he was ultimately not prosecuted, for this incident.

### B.   Defendant's Conduct on January 30, 2019

On January 30, 2019, while a warrant for Defendant's arrest in the instance case was outstanding, the El Paso County Narcotics Unit, HSI, and the U.S. Marshal's Office received information regarding Defendant's location. Based on this information, the officers attempted to locate Defendant on the 9100 block of Viscount Boulevard, El Paso, Texas. The officers observed Defendant arrive at the location in the gray Ford Fusion with a new license plate. A registration

check of the plate number, LMZ-7814, came back to Defendant, the same residential address, and the same vehicle as the former plate.   Once Defendant parked the vehicle, officers approached and placed him under arrest.   A subsequent search of Defendant's person yielded $4,545 in cash held together in rubber bands in his pocket and wallet.   A search of Defendant's vehicle yielded seven ounces of methamphetamine, divided into seven plastic bags, containing approximately one ounce of methamphetamine each.   During the arrest, officers also seized a cellular phone from Defendant, telephone number 915-412-1734.

### C.   Defendant's Telephonic Communications Subsequent to the Instant Offense

Text message communications found on the cellular phone seized during Defendant' arrest on January 30, 2019, confirm that Defendant continued to sell methamphetamine after the instant offense and up until the arrest.   Recorded jail calls between Defendant and his wife show that Defendant has continued to coordinate sales of methamphetamine while in the custody of the U.S. Marshal.   In Defendant's telephonic communications regarding these subsequent buys, he uses the same communication style that he exhibited during his conversations with the UC in early May 2018.   He does not refer to the drug by name, but instead uses code words or merely refers to the number of ounces offered for purchase, *i.e.*, "one," "two," "three," and "four."

## IV.   Argument

### A.   The Evidence is Being Introduced for a Proper Purpose.

"Evidence is offered for a proper purpose if it is used for any of the 'other purposes' enumerated in Rule 404(b)."   *United States v. Davis*, 636 F.3d 1281, 1298 (10th Cir. 2011).   For example, the Tenth Circuit "has time and again held that past drug-related activity is admissible other-acts evidence under Rule 404(b) to prove, *inter alia*, that the defendant had the knowledge

6

or intent necessary to commit the crimes charged." *United States v. Watson*, 766 F.3d 1219, 1237 (10th Cir. 2014) (string citing to prior precedential decisions in this Circuit).   Additionally, "[i]t is settled in the Tenth Circuit that evidence of 'other crimes, wrongs, or acts' may arise from conduct that occurs after the charged offense." *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006).   "Regardless of whether 404(b) evidence is of a prior or subsequent act, its admissibility involves a case-specific inquiry that is within the district court's broad discretion." *United States v. Olivo*, 80 F.3d 1466, 1469 (10th Cir. 1996).   "[S]ubsequent conduct, just as prior conduct, must share similarity with the charged crime."   *Mares*, 441 F.3d at 1157.

Accordingly, Defendant's drug-related activity in 2018 and 2019 is admissible evidence to prove that Defendant had the knowledge and intent necessary to commit the May 8, 2018, offense charged, in addition to proving his identity.   The United States anticipates that at trial, Defendant will argue that he did not sell methamphetamine to a UC on May 8, 2018, and that he has been mistaken for the true perpetrator, one "Mario Hernandez."   Thus, identity will likely be a material issue in this case.   Even if Defendant concedes the issue of identity, however, the United States anticipates that Defendant may claim that he lacked knowledge of the specific contents of the Band Aid box that was inside his vehicle on May 8, 2018, as Defendant never identified the drug by name in his communications with the UC leading up to or following the buy.   Thus, knowledge and intent will be material issues in this case.   Accordingly, the United States seeks to introduce evidence of Defendant's other methamphetamine-related activities for a proper purpose under Rule 404(b).   *See Watson*, 766 F.3d at 1237; *Mares*, 441 F.3d at 1157.

B.     **The Evidence is Relevant.**

To determine relevance under Rule 404(b), courts should examine factors such as the similarity of the other act that is sought to be admitted to the charged conduct and the temporal proximity of the acts.   *United States v. Cardinas Garcia*, 596 F.3d 788, 797-98 (10th Cir. 2010). Here, Defendant's subsequent drug related activities are highly relevant to the crime charged as they all involve trafficking methamphetamine.   Furthermore, the length of time between the conduct involved in the instant indictment and the subsequent acts are "close in time," as they all occurred within one year of each other.   *See United States v. Ramirez*, 63 F.3d 937, 943-44 (10th Cir. 1995) (upholding the admission of prior acts that occurred one year earlier); *United States v. Record*, 973 F.2d 1363, 1372-76 (10th Cir. 1989) (upholding the admission of prior acts that occurred approximately two to three years earlier).

C.     **The Probative Value is not Substantially Outweighed by Unfair Prejudice.**

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."   Fed. R. Evid. 403.   Any relevant evidence of a defendant's crime is "by its nature detrimental to a defendant who asserts he is not guilty."   *Tan*, 254 F.3d at 1211.   Thus, to be unfairly prejudicial, evidence must do more than "damage the [d]efendant's position at trial."   *Id.*   Furthermore, even if evidence is found to be unfairly prejudicial, it may only be excluded if such prejudice "substantially outweigh[s] the probative value of the evidence."   *Id.*   Finally, although district courts have considerable discretion in performing Rule 403 balancing, "exclusion of evidence under Rule 403 . . . is an extraordinary remedy and should be used sparingly."   *Id.* (internal quotations omitted).

Here, the probative value of the evidence is not substantially outweighed by unfair prejudice.  Defendant's subsequent methamphetamine trafficking activities are highly probative of his identity, his knowledge, and his intent in the instant offense.  Particularly in a case of contested identity such as this, the high probative value of the evidence outlined above outweighs the potential for prejudice that may result from its admission.  Accordingly, Defendant's subsequent methamphetamine trafficking activities are admissible under Rule 403.

V.     **Conclusion**

Based on the foregoing, the United States provides formal notice of intent to introduce evidence of bad acts under Rule 404(b) during its case-in-chief.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

***Electronically Filed 5/3/19***
NICOLE T. HAMMOND
RENEE L. CAMACHO
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM   88011
(575) 522-2304

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

***Electronically Filed 5/3/19***
NICOLE T. HAMMOND
RENEE L. CAMACHO
Assistant United States Attorney

9