# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                                                                                    No. 19-cr-137 RB

**MARIO REYNOSO,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Mario Reynoso's Motion in Limine to exclude evidence of prior bad acts and evidence of a prior felony conviction for importation of marijuana. (Doc. 76.) Defendant's Motion is in response to the Government's Notice of Intent to Introduce Evidence of Bad Acts Under Rule 404(b) (Doc. 44) and Notice Regarding Rule 609 Evidence as to Defendant Mario Reynoso (Doc. 58). Defendant is charged with a single count of distributing methamphetamine, and the Government seeks to introduce evidence in its case-in-chief of two instances following the charged offense in which narcotics were seized from Defendant's vehicle, as well as Defendant's telephone communications subsequent to the charged offense that suggest he was engaged in the distribution of narcotics leading up to and following his arrest. (Doc. 44 at 5–6.) The Government also seeks a ruling that if Defendant elects to testify, evidence regarding his 2003 conviction for felony importation of marijuana may be elicited as impeachment evidence on cross examination. Having considered the submissions of counsel and relevant law, the Court will **deny** Defendant's Motion in Limine.

## I.     Relevant Facts

Defendant is charged in a single count Superseding Indictment with "unlawfully, knowingly and intentionally distribut[ing] a controlled substance, 5 grams and more of

methamphetamine . . . [i]n violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)." (Doc. 48 at 1.) The Government bears the burden of proving beyond a reasonable doubt that Defendant knowingly and intentionally distributed the controlled substance as charged, that the substance was in fact methamphetamine and that the amount distributed was at least 5 grams, and that methamphetamine is a controlled substance within the meaning of the law. *See* Tenth Circuit's Pattern Criminal Jury Instructions (2011 ed., Feb. 2018 update) § 2.85.1.

The Government asserts that in March 2018, a source of information (SOI) identified an individual named "Mario" to Homeland Security Investigations (HSI) and informed HSI that Mario was involved in drug trafficking with the Barrio Azteca gang in El Paso, Texas and southern New Mexico. (Doc. 44 at 1.) The SOI did not know Mario's surname, but directed agents to a Facebook page under the name "Mario Hernandez" and suggested that it "might" belong to the Mario the SOI was referring to. (*Id.*) The SOI then "provided HSI with the suspect's vehicle color, make, model, and license plate information—a gray Ford Fusion bearing license plate number KNJ-4185." (*Id.* at 2.) HSI agents performed a registration check and determined that the vehicle was registered to Defendant Mario Reynoso. (*Id.*) The registration check also revealed Defendant's driver's license photo and residential address. (*Id.*) According to the Government, when agents placed Defendant's driver's license photo in a "six-pack" photo lineup, the SOI identified Defendant as the "Mario" the SOI was referring to. (*Id.*)

The SOI provided Mario[1] with the telephone number of an undercover agent (UC) approximately one month later, "under the guise of connecting [him] with a potential

---

[1] Because Defendant has indicated that his main defense will be an alibi defense and identity will be a major issue in this case, the Court refers to the individual the SOI interacted with as "Mario" so as to avoid the appearance of making a judgment on the issue of identity. The Government clearly argues that this individual was Defendant Mario Reynoso (*see*, *e.g.*, Doc. 44), and the Defendant has indicated that he will argue it was not (*see* Doc. 76 at 4–5).

methamphetamine buyer[,]" and gave the UC Mario's number. (*Id.* at 2.) The Government alleges that the telephone number for Mario that the SOI provided HSI was registered at the same address listed on Defendant's vehicle registration. (*Id.* at 2.) Through phone calls and text messages, the UC and Mario coordinated a sale of two ounces of methamphetamine for $800 on May 8, 2018, at the Sunland Park Casino in Sunland Park, New Mexico. (*Id.*) Upon meeting in the parking lot, the UC entered the backseat of the gray Ford Fusion Mario was driving and asked for the methamphetamine. (*Id.* at 3.) Mario "pointed to a Band Aid box laying on top of the center console . . . [and t]he UC took the box, opened it, and discovered a translucent plastic bag of what appeared to be two ounces of methamphetamine." (*Id.*) The UC gave Mario $800 and left the car, but later called Mario to tell "him that he had weighed the methamphetamine" and asked why the amount he purchased was less than two ounces. (*Id.*) Mario eventually conceded the amount was less than agreed upon and "told the UC that he would make it up to the UC upon his next purchase." (*Id.*)

The New Mexico Department of Public Safety Southern Forensic Laboratory analyzed the contents of the bag the UC purchased from Mario, but labeled the evidence receipt "HERNANDEZ, MARIO." (*Id.* at 3–4.) HSI recorded video and audio of the transaction between Mario and the UC that took place in the gray Ford Fusion and recorded all phone calls between the two coordinating the drug buy and their conversation following the sale. (*Id.* at 2–3.) The UC identified the "Mario" he purchased the methamphetamine from as Defendant based on his driver's license, as did the HSI agents who observed the transaction from the parking lot. (*Id.* at 3.)

I. **The Government's Proffered Rule 404(b) Evidence**

   A. **Background**

   Pursuant to Federal Rule of Evidence 404(b), the Government seeks to introduce evidence in its case-in-chief of several "bad acts" that Defendant engaged in subsequent to the charged drug

3

sale on May 8, 2018, to prove Defendant's identity, knowledge, and intent related to the offense. (*See* Doc. 44.) First, the Government seeks to introduce evidence that on August 22, 2018—approximately three and a half months after the charged drug sale at the Sunland Park Casino, two officers in the Narcotics Unit of the El Paso County Sherriff's Office were conducting a narcotics investigation in the parking lot of a hotel in El Paso and recognized Defendant as a "current investigative target." (*Id.* 5.) The Government alleges that the officers then "initiated a consensual encounter" and Defendant allowed them to conduct a pat down and canine inspection of the exterior of his vehicle, leading to the discovery of "a stack of U.S. currency in Defendant's pocket, as well as 74 grams of methamphetamine, 37.10 grams of heroin, 32.60 grams of cocaine, 0.76 ounces of marijuana, drug paraphernalia, and a digital scale inside of his vehicle." (*Id.* at 5.) The officers seized the narcotics and arrested Defendant, but he was not prosecuted. (*Id.*)

Next, the Government intends to offer evidence surrounding Defendant's January 30, 2019 arrest on an outstanding warrant that had been issued following his indictment in the current case. (*Id.*) Defendant was apprehended in the same gray Ford Fusion registered under his name and address that the SOI had alerted agents to in March, but bearing a different license plate. (*Id.* at 5–6.) Officers found $4,545 in cash on Defendant's person and "seven ounces of methamphetamine, divided into seven plastic bags, containing approximately one ounce of methamphetamine each," in the vehicle. (*Id.* at 6.)

Finally, the Government seeks to introduce text messages found on a cellular phone seized from Defendant during his January 30, 2010 arrest that "confirm that Defendant continued to sell methamphetamine after the instant offense and up until the arrest." (*Id.*) The cellular phone has a different number than the number through which the UC coordinated the May 8, 2018 drug purchase from "Mario." (*Id.*) In addition, the Government seeks to introduce "[r]ecorded jail calls

between Defendant and his wife that show that Defendant has continued to coordinate sales of methamphetamine while in the custody of the U.S. Marshal." (*Id.* at 6.) The Government asserts that in these text messages and calls Defendant uses "the same communication style" that Mario used when communicating with the UC to coordinate the charged drug sale in May 2018, including use of "code words" rather than referring to drugs by name. (*Id.*)

The Government argues that each of these subsequent "bad acts"—(i) possession of 74 grams of methamphetamine, other narcotics, and a digital scale in his gray Ford Fusion; (ii) possession of seven ounces of methamphetamine divided into multiple one-ounce bags in his gray Ford Fusion; and (iii) various coded communications suggesting involvement in narcotics trafficking—are all admissible to show Defendant's identity, knowledge, and intent regarding the charged count of distribution of methamphetamine on May 8, 2018. (*See id.* at 6–7.) Defendant urges the Court to exclude all such evidence because it is unduly prejudicial and irrelevant since knowledge and intent are not at issue in the case. (*See* Doc. 76 at 4–5.) Further, Defendant argues that none of the proffered evidence of subsequent bad acts rises to the level of "signature quality" and thus cannot be properly admitted to prove identity in this case. (*Id.* at 6.)

**B. Legal Standard for Rule 404(b) Evidence**

Under Federal Rule of Evidence 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But such evidence may be admissible if offered to prove something other than criminal propensity, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In the Tenth Circuit, courts apply the four-part test articulated in *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988), to determine the admissibility of Rule 404(b) evidence:

5

> (1) [the] evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

*United States v. Diaz*, 679 F.3d 1183, 1190 (10th Cir. 2012) (quotation omitted).

The Tenth Circuit has held that relevant evidence of other crimes or acts should be admitted "except that which tends to prove *only* criminal disposition." *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001) (quotation and citation omitted). Under this "inclusive" approach, "[t]he government bears the burden of showing that the proffered evidence is relevant to an issue other than character[,]" *United States v. Youts*, 229 F.3d 1312, 1317 (10th Cir. 2000) (citation omitted), and must "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred . . . ." *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985); *see also United States v. Commanche*, 577 F.3d 1261, 1226 (10th Cir. 2009). "It is settled in the Tenth Circuit that evidence of 'other crimes, wrongs, or acts' may arise from conduct that occurs *after* the charged offense." *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006); *see also United States v. Olivo*, 80 F.3d 1466, 1469 (10th Cir. 1996) ("Regardless of whether 404(b) evidence is of a prior or subsequent act, its admissibility involves a case-specific inquiry that is within the district court's broad discretion.") (citation omitted); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000)).

### C. Analysis

#### i. The evidence is offered for a proper purpose.

Under the first *Huddleston* factor, the evidence is offered for a proper purpose because the Government seeks to use it to prove "that the Defendant had the knowledge and intent necessary to commit the May 8, 2018[] offense charged, in addition to proving his identity." (Doc. 44 at 7.)

6

"Evidence is admitted for a proper purpose if allowed for one or more of the enumerated purposes in Rule 404(b)." *Mares*, 441 F.3d at 1156. Knowledge, intent, and identity are all valid purposes listed under Rule 404(b)(2), and the Court thus finds that the Government seeks to introduce evidence of Defendant's prior or subsequent bad acts to prove much more than Defendant's character or criminal disposition.

### ii. The evidence is relevant to identity, knowledge, and intent.

Evidence is relevant if it has "any tendency to make a fact [of consequence] more or less probable." Fed. R. Evid. 401. The Court turns first to the issue of identity, which Defendant has made clear will be a fact of consequence at trial. (*See* Docs. 76 at 4; 59.) The Tenth Circuit has upheld the admission of evidence of other crimes and acts to prove identity under Rule 404(b) "[i]f the crimes share elements that possess 'signature quality . . . .'" *United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982). "[T]o prove identity, evidence of prior illegal acts need not be identical to the crime charged, so long as, based on a 'totality of the comparison,' the acts share enough elements to constitute a 'signature quality.'" *United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir. 1997) (citations omitted). "Elements relevant to a 'signature quality' determination include the following: geographic location; the unusual quality of the crime; the skill necessary to commit the acts; or use of a distinctive device." *United States v. Smalls*, 752 F.3d 1227, 1238 (10th Cir. 2014) (quoting *Shumway*, 112 F.3d at 1420). "This list is not exhaustive, but it does underscore the requirement that the characteristics of the crimes 'be so unusual and distinctive as to be like a signature.'" *Id.* (quoting *United States v. Connelly*, 874 F.2d 412, 417 (7th Cir. 1989)).

Defendant avers that "[o]ther than [his] car, his May 22, 2018 arrest by El Paso authorities shares no signature quality elements with the instant case." (Doc. 76 at 6–7.) Defendant points out the arrest related to his possession of methamphetamine following a consensual interaction with

7

law enforcement agents in August 2018 did *not* involve Defendant selling the agents drugs, did *not* take place at a casino, and merely resulted from "a fortuitous claimed consensual encounter while agents were looking for another suspected drug dealer." (*Id.* at 7.) Further, he argues that the seizure of methamphetamine during his arrest on January 30, 2019, was "uneventful and not unique," and thus does not constitute any type of "signature quality" that would make the evidence admissible to prove his identity. (*Id.*)

The Court acknowledges that Defendant's drug-related activities subsequent to the charged offense do not share the more colorful or unique "signature qualities" that the Tenth Circuit has previously recognized as admissible to prove identity under Rule 404(b). *See*, *e.g.*, *Smalls*, 752 F.3d at 1239 ("[a] plan to use asthma as an excuse to cover up a victim's true cause of death is sufficiently 'unusual and distinctive' to constitute a signature quality"); *compare United States v. Patterson*, 20 F.3d 809, 813 (10th Cir. 1994) ("[t]he hijacker in both cases was similarly dressed in a tan coat and cowboy boots. Hijacking is an unusual crime and these two hijackings were very similar; therefore, these crimes are probative of the identity issue"), *with United States v. Rios-Morales*, No. 14-20117-02-JAR, 2015 WL 5637532, at *4 (D. Kan. Sept. 24, 2015), *aff'd*, 878 F.3d 978 (10th Cir. 2017) ("the use of shipping entities, the sale of methamphetamine, wire transfers, and purchases on credit . . . are not sufficiently 'distinctive' or 'unique' to constitute a 'signature quality.' Indeed, these are common elements of many drug conspiracies.").

Yet Defendant himself has acknowledged the most important factor that makes his later drug-related activity "distinctive" and "unique" enough as to be relevant to the issue of identity—the presence of his car. (*See* Doc. 76 at 6–7). Defendant is correct that possession and distribution of methamphetamine are unfortunately not distinctive or unusual crimes—especially in this region. However, the Court notes that one of the factors to be considered in "the totality of the

comparison," test for determining admissibility to prove identity is "use of a distinctive device . . . ." *See Shumway*, 112 F.3d at 1420. The specific vehicle in which "Mario" conducted the charged methamphetamine sale was then linked to two subsequent incidents in which large quantities of methamphetamine (either divided into baggies or accompanied by a digital scale and accompanied by large quantities of cash) were seized from the same vehicle.

A gray sedan may seem far from a "distinctive device" when compared to "distinctive devices" in the caselaw, such as a highly complex and unique homemade explosive device. (*See* Doc. 76 at 6 (citing *United States v. Trenkler*, 61 F.3d 45, 54–55 (1st Cir. 1995).) Yet the Government has indicated that it intends to introduce evidence that the *exact same gray Ford Fusion*, registered to the Defendant at his residential address, was the site of distribution in the May 2018 methamphetamine sale as well as the site of possession of large quantities of methamphetamine later seized in two separate incidents. That the facts of this case do not appear to fit perfectly with existing caselaw on identity-related Rule 404(b) evidence is perhaps because cases in which such specific evidence links a defendant to the charged crime rarely turn on the issue of identity. Still, the Court finds that the gray Ford Fusion registered under Defendant's name and address is a sufficiently specific device to render evidence of Defendant's subsequent drug-related bad acts involving the vehicle relevant to prove identity in the charged crime.

The relevance of text messages on a phone seized during Defendant's arrest and recorded jail calls between Defendant and his wife are a closer call when it comes to proving identity. The Government asserts that the coded language Defendant used in such calls is relevant to prove identity as well as knowledge and intent (Doc. 44 at 6–7), while Defendant argues that "[i]t is no stretch that a purported drug dealer would use 'code words' to conduct his clandestine business. Such is not unique and surely does not qualify as a signature quality." (Doc. 76 at 7.) The Court is

9

inclined to agree with Defendant on this point. Defendant's use of coded language in his calls and texts following the charged crime, such as referring to the number of ounces for sale rather than referring to the narcotics by name, is likely not unique or distinctive enough to render the coded language a "signature quality" that can link Defendant to the individual who sold the methamphetamine to the UC on May 8, 2018. However, as discussed below, the recorded phone calls and text messages, to the extent they prove Defendant's subsequent involvement in distribution of narcotics, will be relevant to prove knowledge and intent and are admissible on that ground. If Defendant seeks a narrow limiting instruction on the issue of the phone calls and text messages—instructing the jury to consider them as evidence of knowledge and intent but not as evidence of identity—he may so move. However, finding that the evidence will be admissible either way, the Court will not impose such a narrow limiting instruction unless Defendant specifically requests it.

Though Defendant intends to call an alibi witness (*see* Doc. 59), the Government may still introduce evidence to prove intent and knowledge because they are elements of the offense that the Government bears the burden of proving beyond a reasonable doubt. Defendant argues that his main defense will involve an alibi and thus "[i]t appears the sole issue in this matter is whether the Defendant was elsewhere during the commission of this offense . . . [and] knowledge and intent are irrelevant . . . ." (Doc. 76 at 5.) However, introducing a notice of alibi witness and surmising that "it appears" intent and knowledge are not in dispute is not the same as formally stipulating to those elements. *See United States v. Harrison*, 942 F.2d 751, 760 (10th Cir. 1991) ("Faced with a plea of not guilty, the government need not await the defendant's denial of intent on the witness stand before offering evidence of similar relevant acts.") Thus, Rule 404(b) evidence may be introduced to prove intent or knowledge when they are required elements of the charged crime,

even before those elements are "actively contested." *See id.* In *Shumway*, the Tenth Circuit upheld a trial court's decision to admit Rule 404(b) evidence to prove knowledge and intent in a similar scenario where the defendant argued those elements were not at issue. 112 F.3d at 1421 ("since knowledge and intent were required elements, and since Mr. Shumway had not stipulated that the only contested issue was identity, the 404(b) evidence was admissible to show knowledge and intent as well as identity").

In analyzing what qualifies as relevant evidence to prove knowledge and intent, "prior narcotics involvement is relevant when [it] is close in time, highly probative, and similar to the activity with which the defendant is charged." *United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000) (quotation marks and citations omitted); *see also United States v. Conway*, 73 F.3d 975, 981 (10th Cir. 1995) ("The Tenth Circuit has long recognized the relevance of previous wrongs and crimes in the context of narcotics violations." (quotation omitted)). However, a fact-specific comparison of the circumstances surrounding the prior acts and later offenses is important in determining relevance. *See Becker*, 230 F.3d at 1232.

Each of Defendant's alleged subsequent bad acts involving narcotics trafficking—the August 22, 2018 arrest and seizure of methamphetamine, the January 30, 2019 arrest and seizure of methamphetamine, and the text messages on the phone seized from Defendant on January 30, 2019—all took place within nine months of the May 8, 2018 charged methamphetamine sale. They are thus sufficiently "close in time" to the charged offense to be relevant to knowledge and intent to distribute methamphetamine. Though the Government does not state the exact dates of the recorded jail calls between Defendant and his wife, they necessarily occurred at some point between Defendant's arrest on January 30, 2019, and May 3, 2019, when the Government filed its notice of intent to introduce the recordings as Rule 404(b) evidence. Any calls made before May

11

3, 2019, also took place within a year of the charged offense. *See*, *e.g.*, *Becker*, 230 F.3d at 1232 ("[f]our to six years transcends our conception of 'close in time'"); *United States v. Ramirez*, 63 F.3d 937, 943–44 (10th Cir. 1995) (upholding the admission of prior acts that occurred one year earlier).

Next, a fact-specific comparison of the circumstances surrounding the charged offense and later bad acts reveals that each of the three contested instances of Defendant's subsequent involvement with narcotics are indeed similar enough to the charged May 8, 2018 drug sale to be probative of Defendant's knowledge and intent. *See Becker*, 230 F.3d at 1232. The Government anticipates that if identity is either conceded or successfully proven at trial, "Defendant may claim that he lacked knowledge of the specific contents of the Band Aid box that was inside his vehicle on May 8, 2018, as Defendant never identified the drug by name in his communications with the UC leading up to or following the buy." (Doc. 44 at 7.) Evidence that in the months following the alleged May 8, 2018, transaction, Defendant was in possession of large quantities of methamphetamine on two occasions—in one instance divided into smaller baggies like the one in the Band Aid box and at other times accompanied by indicia of drug trafficking like large amounts of cash a digital scale—serve to make it more likely that Defendant had knowledge of the contents of the Band Aid box on May 8, 2018, and intended to engage in methamphetamine trafficking.

Defendant's recorded phone calls and seized text messages, if the Government can prove that they are probative of involvement in narcotics trafficking, would also help prove that Defendant had the intent to engage in methamphetamine distribution including and following the May 8, 2018 sale. The Court finds that the Government has met its burden of "articulat[ing] precisely the evidentiary hypothesis by which a fact of consequence may be inferred" to show that

the proffered evidence of subsequent bad acts will be relevant to proving the required elements of the charged crime. *See Kendall*, 766 F.2d at 1436.

Tenth Circuit caselaw also supports a finding that the evidence of Defendant's subsequent bad acts is similar enough to the charged offense to be relevant to prove knowledge and intent in this case. In *United States v. Wilson*, the Tenth Circuit held that a prior conviction for possession of cocaine during a traffic stop "taken alone does little to support an inference that Mr. Wilson either possessed, knew he possessed, or intended to distribute the cocaine found at [a residence]." 107 F.3d 774, 785 (10th Cir. 1997), *abrogated on other grounds in United States v. King*, 632 F.3d 646, 651 n.5 (10th Cir. 2011). Here, however, Defendant's alleged distribution of methamphetamine and subsequent possession of methamphetamine all took place in the same *vehicle* registered under his name and address.

In *Becker*, the court reasoned that the "prior recovery of methamphetamine trafficking paraphernalia from [the defendant's] residence and his prior convictions for conspiracy to possess methamphetamine . . . involve only possession and distribution, not manufacturing, and thus lack a common scheme" to support a manufacturing charge. 230 F.3d at 1232–33. Here, on the other hand, the charged distribution of methamphetamine offense and Defendant's subsequent possession of large quantities of methamphetamine in his vehicle are quite similar, and his alleged use of a cell phone and jail phone calls to coordinate narcotics trafficking are likewise quite similar to his alleged use of the first phone to coordinate the drug buy with the UC. *See also United States v. Ramirez*, 63 F.3d 937, 943 (10th Cir. 1995) ("Each of the offenses for which defendant was charged required the government to prove either knowledge or intent with respect to defendant's possession of the cocaine, its distribution, or his participation in the conspiracy[,]" so testimony that the "defendant previously had been arrested for drug trafficking and found in possession of

eight ounces of cocaine and $43,000 in cash—was probative of defendant's knowledge and intent with respect to the offenses charged.")

### iii. The probative value of Defendant's subsequent bad acts is not outweighed by any potential for prejudice.

Finally, under Rule 403, the Court may exclude evidence if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Evidence may be unfairly prejudicial if it "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *Tan*, 254 F.3d at 1211–12 (quotation omitted); *see also United States v. Smith* 534 F.3d 1211, 1219 (10th Cir. 2008).

As discussed above, the Tenth Circuit has held that prior involvement with narcotics is relevant Rule 404(b) evidence demonstrating intent if it is sufficiently similar and close in time to the charged acts. *See Becker*, 230 F.3d at 1232; *see also Conway*, 73 F.3d at 981. The evidence that Defendant possessed large amounts of methamphetamine and other narcotics may indeed elicit a reaction from the jury, but likely no more so than other allegations of involvement in drug trafficking that will already be presented at trial. As such, the admissibility of subsequent drug-related acts that are highly probative of identity, knowledge, and intent to distribute are not outweighed by any potential prejudice their admission may cause. To ensure that Defendant is not unduly prejudiced by the introduction of the Rule 404(b) evidence, however, the Court will instruct the jury to consider this evidence only for the purposes for which it is offered and not to draw from it any general conclusions about Defendant's character or his propensity to commit crimes.

## II. The Government's Proffered Rule 609 Evidence

Next the Government has given notice that it intends to introduce evidence of Defendant's three prior felony convictions if he elects to testify at trial. (*See* Doc. 58 at 1.) The Government states that on June 6, 2003, Defendant was convicted in the Western District of Texas on one count of Importation of a Controlled Substance Involving 50 Kilograms or More of a Mixture or Substance Containing a Detectable Amount of Marijuana. (*Id.* at 4.) The Government also asserts that on November 2, 2012, Defendant was convicted in El Paso County District Court of one count of Robbery and on July 8, 2015, he was convicted in El Paso County District Court of one count of Possession of Less Than 1 Gram of a Controlled Substance. (*Id.*)

Pursuant to Federal Rule of Evidence 609, a crime that was punishable by imprisonment for more than one year and occurred less than ten years before the currently charged offense "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Civ. P. 609(a)(1)(b). If more than ten years have passed since the felony conviction, however, evidence of such a conviction is only admissible if the proponent of the evidence gives the adverse party reasonable written notice and "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect . . . ." Fed. R. Civ. P. 609(b).

In the context of Rule 609(a)(1), the Tenth Circuit considers the following five factors to determine if the probative value of a defendant-witness's prior conviction outweighs its prejudicial effect on the defendant:

> (1) the impeachment value of the defendant's prior crimes; (2) the dates of the convictions and the defendant's subsequent history; (3) the similarity between the past crime and charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility at trial.

*Smalls*, 752 F.3d at 1240 (citation omitted).

Defendant has not objected to the introduction of his prior convictions for Robbery and Possession of Less Than 1 Gram of a Controlled Substance. (*See* Doc. 76.) Noting the lack of objection, the Court finds that, if Defendant testifies, his credibility and testimony will be central to trial and his felony convictions are not so similar to the charged offense that the jury might be confused or misled. Thus, if Defendant elects to testify in his own defense, the Government may elicit details of his robbery and 2015 possession felonies. Of course, because defendants stand to be uniquely prejudiced by the introduction of impeachment evidence when they choose to testify in their own defense, in this Circuit "only the prior conviction[s], [their] general nature, and punishment of felony range [are] fair game for testing the defendant's credibility." *United States v. Commanche*, 577 F.3d 1261, 1271 (10th Cir. 2009) (quoting *United States v. Albers*, 93 F.3d 1469 (10th Cir. 1996)).

Defendant does object, however, to the introduction of his 2003 felony conviction for importation of marijuana because the conviction is more than ten years old and thus "generally do[es] not have much probative value." (*See* Doc. 76 at 9 (quoting *United States v. Chapman*, No. CR 14-1065 JB, 2015 WL 4042177, at *12 (D.N.M. June 29, 2015)).) He argues that the introduction of his 2003 conviction as impeachment evidence would be highly prejudicial because it is a drug trafficking offense similar to the charged crime "and would surely invite improper inferences." (*Id.*) The Court finds that a felony offense for importing narcotics is highly probative of Defendant's credibility as a witness, and that while it is a drug trafficking crime, it is an *importation* offense, not a *distribution* offense, and thus remains highly relevant to Defendant's credibility but carries less potential to confuse or mislead the jury. Further, Defendant's 2003 importation offense and the resulting sentence served are currently enumerated in the Superseding Indictment in this case as a sentencing enhancement allegation. (*See* Doc. 48 at 1.) The

Government's proposed jury instructions even include provisions instructing the jury to determine whether Defendant was indeed convicted of the importation offense and whether he was "released from any term of imprisonment for the serious drug felony conviction within 15 years of the date of the commencement of the offense charged in the indictment . . . ." (Doc. 72 at 2–3.) Since the details of the importation offense that Defendant seeks to exclude under Rule 609(b) are currently included in the Superseding Indictment, the Court does not find that the introduction of the same information as impeachment evidence would be significantly prejudicial. Thus, in this case the probative value of the 2003 importation conviction to Defendant's credibility—should he take the stand—substantially outweighs its current potential for prejudice.

However, at the pretrial motion hearing currently set for 8:30 a.m. on Monday, July 8, 2019, the Court will take up the issue of whether Defendant's 2003 conviction for importation of marijuana is properly presented to the jury as part of the superseding indictment, jury instructions, and verdict form. Should the Court find that the inclusion of such information is unduly prejudicial to Defendant, the Court will entertain argument from Defendant to reconsider whether the 2003 felony conviction's probative value as impeachment evidence still substantially outweighs its potential for prejudice.

**THEREFORE**,

**IT IS ORDERED** that Defendant Mario Reynoso's Motion in Limine (Doc. 76) is **DENIED**;

**IT IS FURTHER ORDERED** the Government may introduce evidence of Defendant's subsequent involvement with narcotics as proffered in its Notice of Intent to Introduce Evidence of Bad Acts Under Rule 404(b) (Doc. 44); and

**IT IS FURTHER ORDERED** that, pending further notice, if Defendant elects to testify at trial, the Government may introduce evidence of Defendant's 2003 conviction for importation of marijuana and other prior convictions as impeachment evidence pursuant to Rule 609 (*see* Doc. 58).

_____
**ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE**