IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                           No. 19-cr-137 RB

MARIO REYNOSO,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on four motions giving notice of the Government's intent to introduce expert testimony and requesting pretrial admissibility rulings on such evidence. First, the Government's Notice of Intent to Offer Expert Testimony of DEA Special Agent Joseph Montoya and Motion in Limine for Ruling on Admissibility of Evidence. (Doc. 41.) Next, the Government's Notice of Expert Witness Testimony of Forensic Chemists/Scientists and Motion in Limine for *Daubert*/*Velarde* Ruling on its Admissibility. (Doc. 43.) This motion was followed by two supplemental notices regarding expert testimony of forensic chemists/scientists. (Docs. 71; 79.) In all the motions, the Government provides notice under Federal Rule of Criminal Procedure 16(a)(1)(G) that it intends to introduce expert testimony at trial and requests that the Court rule the witnesses are qualified experts and their testimony is admissible under Federal Rule of Evidence 702. (*See* Docs. 41 at 1; 43 at 1; 71 at 1; 79 at 1.) Defendant has not responded to or opposed the motions. After considering the submissions of counsel and relevant law, the Court will **grant** the Government's motions and allow the testimony of its four proffered expert witnesses.

**I.      Factual Background**

Defendant is charged in a single count Superseding Indictment with "unlawfully, knowingly and intentionally distribut[ing] a controlled substance, 5 grams and more of

methamphetamine . . . [i]n violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)." (Doc. 48 at 1.) The Government bears the burden of proving beyond a reasonable doubt that Defendant knowingly and intentionally distributed the controlled substance as charged, the substance was in fact at least 5 grams of methamphetamine, and that methamphetamine is a controlled substance within the meaning of the law. *See* Tenth Circuit's Pattern Criminal Jury Instructions (2011 ed., Feb. 2018 update) § 2.85.1.

The Government asserts that in March 2018, a source of information (SOI) identified an individual named "Mario" to Homeland Security Investigations (HSI) and informed HSI that Mario was involved in drug trafficking with the Barrio Azteca gang in El Paso, Texas and southern New Mexico. (Doc. 44 at 1.) The SOI then provided Mario with the telephone number of an undercover agent (UC) "under the guise of connecting Defendant with a potential methamphetamine buyer" and provided the UC with Mario's phone number. (*Id.* at 2.) The UC and Mario coordinated a meeting on May 8, 2018, at the Sunland Park Casino in Sunland Park, New Mexico. (*Id.*) Upon meeting in the parking lot, the UC entered the backseat of the gray Ford Fusion Mario was driving and asked for the methamphetamine. (*Id.* at 3.) Mario "pointed to a Band Aid box laying on top of the center console . . . [and t]he UC took the box, opened it, and discovered a translucent plastic bag of what appeared to be two ounces of methamphetamine." (*Id.*) The UC gave Mario $800 and concluded the meeting. (*Id.*) The New Mexico Department of Public Safety Southern Forensic Laboratory analyzed the contents of the bag, but labeled the evidence receipt "HERNANDEZ, MARIO." (*Id.* at 3–4.) Defendant's name is Mario Reynoso, and he asserts that he was misidentified and will marshal an alibi defense at trial. (*See* Docs. 59; 76 at 4–5.)

The Government has given notice that it will introduce evidence of several "bad acts" Defendant engaged in after May 8, 2018, to prove identity, knowledge, and intent regarding the

charged offense. First, possession of 74 grams of methamphetamine, other narcotics, and a digital scale seized from Defendant's gray Ford Fusion as the result of an arrest on August 22, 2018. (Doc. 44 at 5.) Second, possession of seven ounces of methamphetamine divided into seven one-ounce bags seized from Defendant's gray Ford Fusion following his arrest on January 30, 2019, for the charged offense. (*Id.* at 5–6.) Third, various text messages on a phone seized from Defendant on January 30, 2019, and recorded jail calls between Defendant and his wife using coded language suggesting involvement in narcotics trafficking. (*Id.* at 6.)

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the Government provided Defendant with a written summary of the testimony it intends to introduce under Federal Rule of Evidence 702, which governs expert witness testimony. (*See* Docs. 41; 43; 71; 79.) At the same time, the Government requested pretrial orders that its proffered witnesses be qualified as experts based on their experience and qualifications, and that their anticipated testimony be ruled admissible based on the briefings. (*See* Docs. 41 at 5; 43 at 4; 71 at 5–6; 79 at 4). In each of the motions providing notice and seeking pretrial rulings on the admissibility of the expert testimony, the United States submits that the proposed expert witnesses have "a reliable basis in knowledge and experience" in their fields, and that the expert witness testimony they will provide is relevant and admissible under Rule 702. (Docs. 41 at 2; 43 at 3; 71 at 4; 79 at 3.) Defendant has not responded to the Government's motions seeking pretrial admissibility orders, nor objected to the anticipated testimony of any of the proposed expert witnesses.

The Government has indicated that it will introduce testimony from DEA Special Agent Joseph Montoya regarding:

1. The manner in which individuals and organizations package, conceal, transport, and distribute methamphetamine.
2. The bulk and street values of the methamphetamine seized from the defendant.
3. The quantities of methamphetamine that are typically sold and consumed.

4. That the amount of methamphetamine seized from the defendant is consistent with the intent to distribute methamphetamine.
5. The common ways in which individuals attempt to avoid detection by law enforcement by using prepaid telephones or fictitious names.
6. The coded language and terminology that is typically used by narcotics traffickers and the analysis of specific coded language in communications made over the defendant's telephone and in calls made by the defendant from the Doña Ana Detention Center.

(Doc. 41 at 4.)

The Government has submitted Mr. Montoya's curriculum vitae (*see* Doc. 41-1) and an overview of his qualifications, including that has been a DEA Special Agent since 1999 and has participated in "over 500 investigations involving the possession, manufacture, distribution, and importation of controlled substances, including methamphetamine, . . . [and has] been involved in over 200 undercover operations as a transporter/courier, facilitator, seller, or purchaser of controlled substances." (Doc. 41 at 1–2.)

The Government has indicated that it will also introduce expert testimony from New Mexico Department of Public Safety Forensic Scientist Patrick Chavez, who tested the methamphetamine Defendant is charged with distributing in this case (Doc. 43 at 1) as well as the methamphetamine seized from Defendant on August 22, 2018 (Doc. 71 at 2), and January 30, 2019 (Doc. 79 at 2); Texas Department of Public Safety Forensic Scientist Vanessa Ponce, who tested a different portion of the methamphetamine seized from Defendant on August 22, 2018 (*id.* at 2–3); and Forensic Chemist Kelsey M. Dewitt, who is employed by National Medical Services in North Carolina and tested a portion of the methamphetamine seized on January 30, 2019 (*id.* at 3).

The Government anticipates that Mr. Chavez will testify "that he tested the substance purchased from the defendant on May 8, 2018[,] and that he determined that the substance was 47.785 net grams of methamphetamine[,]" and that "the substance contained 100% pure methamphetamine." (Doc. 43 at 1–2). Mr. Chavez will also testify that "he tested a portion of the

substance seized from the defendant on August 22, 2018[,]" by testing two bags that contained 24.328 net grams of methamphetamine and 23.741 net grams of methamphetamine and "2 small ziplock bags and 17 knotted corners of plastic baggies[,]" which contained a combined 17.114 grams of methamphetamine. (Doc. 71 at 2.) He will testify that all the methamphetamine he tested from August 22, 2018, was 100% pure. (*Id.*) Finally, Mr. Chavez will testify that he tested seven bags of methamphetamine that were seized from Defendant on January 30, 2019, and determined that together they contained 165.804 net grams of methamphetamine with a purity of 96%, "resulting in 159.171 net grams of pure methamphetamine." (Doc. 79 at 2.)

The Government anticipates that Ms. Ponce will testify that she tested a different portion of the methamphetamine seized from Defendant on August 22, 2018, and determined that the bag she tested contained 24.53 net grams of methamphetamine. (*See* Doc. 71 at 2–3.) Finally, Ms. Dewitt will testify that she "tested a portion of the methamphetamine seized from the defendant on January 30, 2019[,]" and that the entire gross weight of the amount seized that day was 173.72 gross grams. (Doc. 71 at 3.) She completed a forensic analysis on one of the seven seized bags and determined that it contained 23.88 net grams of methamphetamine. (*Id.*) Summaries of Mr. Chavez's, Ms. Ponce's and Ms. Dewitt's anticipated testimony suggest that they will give opinions based on laboratory reports they prepared after personally examining and analyzing the substances submitted for analysis. (*See* Docs. 71-1 at 1–2; 71-2 at 1–3; 71-3 at 1–2; 79-1; 79-2; 43-1.) The Government has submitted each proffered witness's qualifications and curriculum vitae. (*See* Docs. 71-1 at 3–7; 71-2 at 4–5; 71-4 at 1–2.)

## II. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony, and provides that a qualified expert witness may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–97 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999).

As part of its evidentiary gatekeeping function under Rule 702, the Court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The Court has "wide latitude . . . in exercising its discretion to admit or exclude expert testimony." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Provided that "the court has sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand[,]'" it may fulfill its gatekeeping role at various stages of the litigation process, including "when asked to rule on a motion in limine." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (quoting *Daubert*, 509 U.S. at 597). Therefore, the Court will rule on the admissibility of the Government's expert testimony in this Order, but if necessary will exercise its discretion to consider any remaining or unanticipated issues regarding the testimony that may arise at trial.

**III. Discussion**

Here, the proposed expert testimony regarding the chemical analysis of seized drugs and the typical operations of drug traffickers are both relevant to the case. Evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence describing the drugs sold to the UC during the charged drug sale on May 8, 2018, will tend to make it more or less likely that the bag inside the Band Aid box contained methamphetamine in the amounts charged. Similarly, the Court has held that

evidence regarding the methamphetamine that was allegedly seized from Defendant's vehicle during separate arrests on August 22, 2018, and January 30, 2019, is admissible under Federal Rule of Evidence 404(b) to prove identity, knowledge, and intent. (*See* Doc. 83 at 6–14). Thus, whether the substances seized on those occasions were indeed methamphetamine and in what amount will render those subsequent alleged instances of involvement with narcotics more or less probative of the charged offense.

Similarly, evidence of how drug trafficking operations typically function will shed light on the likelihood that Defendant had knowledge and intent to participate in narcotics distribution by coordinating sales over the phone from jail and in text messages prior to his arrest. Testimony regarding Defendant's methods of communication and "coded language" will tend to make it more or less likely that he had the knowledge and intent to engage in the distribution of methamphetamine following the May 8, 2018 drug sale, which is in turn probative of his knowledge and intent regarding the charged offense. (*See* Doc. 83 at 12–13).

The remaining question for the Court to resolve, then, is whether the proposed expert testimony is reliable. *Daubert* sets out a non-exhaustive, "flexible" set of factors that trial courts may consider to determine whether proposed expert testimony is based on reliable methods and principles:

> (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community.

*United States v. Taylor*, 663 F. Supp. 2d 1170, 1173 (D.N.M. 2009) (citing *Daubert*, 509 U.S. at 593–94). However, "whether *Daubert's* specific factors are, or are not, reasonable measures of

reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139.

In regard to the forensic scientist and chemists, as the Government points out, "there are no novel scientific principles at play." (Doc. 71 at 5.) Each of the proposed expert witnesses is employed in the field of forensic analysis and all are fully qualified to detect and analyze controlled substances. Thus, the Court rules that the proffered expert testimony of Mr. Chavez, Ms. Ponce, and Ms. Dewitt (*see* Docs. 43; 71; 79) regarding the specific substances they personally analyzed have a reliable basis and will be admitted.

Special Agent Montoya is qualified, based on his experience and training, to provide an expert opinion on matters relating to narcotics trafficking. *See Daubert*, 509 U.S. at 589. The Tenth Circuit has upheld the relevance and reliability of expert testimony from law enforcement officers to explain the significance of "tools of the trade," *see United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000), as well as to describe "typical indicia of drug trafficking activity," *see United States v. Lovern*, 590 F.3d 1095, 1102 (10th Cir. 2009). *See also United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992).

**THEREFORE**,

**IT IS ORDERED** that Mr. Patrick Chavez, Ms. Vanessa Ponce, Ms. Kelsey Dewitt, and DEA Special Agent Joseph Montoya are qualified as expert witnesses to provide testimony under Federal Rule of Evidence 702 and their proposed testimony as described in the Government's disclosures (Docs. 41; 43; 71; 79) is reliable and admissible under Rule 702.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**