## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Case No.  19-CR-137-RB |
| § | |
| MARIO REYNOSO, § | |
| § | |
| Defendant. § | |

### DEFENDANT MARIO REYNOSO'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIACE

COMES NOW, Defendant Mario Reynoso, by his undersigned counsel, Dean Clark, and files his *Objections to the Presentence Investigation Report and Sentencing Memorandum and Request for Downward Variance* as detailed below:

### *Mr. Reynoso Objects to the Use of Drugs Seized on August 22, 2018 and January 9, 2019 as Relevant Conduct to Determine His Offense Level in this Matter.*

Paragraph 11 of the PSR describes the seizure of approximately 65.183 net grams of actual methamphetamine, 30.4 grams of cocaine, 35.15 grams of heroin, and 18.9 grams of marijuana as well as $4890.00 in cash from the Defendant on August 22, 2018 at a hotel in El Paso.

Paragraph 12 of the PSR describes the seizure of approximately 159.17 grams of actual methamphetamine and $4545.00 from the Defendant on January 9, 2019 when he arrived at a bar in El Paso.

Paragraph 15 of the PSR includes the two events listed above in its summary.  In paragraph 20 of the PSR, the Defendant's offense level is determined by including the drug amounts listed in the August 22, 2018 and January 9, 2019 seizures as well as the drugs he was convicted of selling in

1

this case, approximately 47.78 grams of actual methamphetamine.

This Court should not consider the two unrelated events of August 22, 2018 and January 9, 2019 as relevant conduct in order to determine the Defendant's offense level in this matter.

§1B1.3(a)(2) of the Sentencing Guidelines, ("Relevant Conduct (Factors that Determine the Guideline Range") allows the Court to consider "all acts and omissions" that comprise "part of the same course of conduct or common scheme or plan as the offense of conviction." Two offenses qualify "as part of the *same course of conduct* if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, cmt. n.5(B)(ii) (emphasis added). In applying the "same course of conduct" standard, "similarity, regularity, and temporal proximity" constitute "the significant elements to be evaluated." *Hamilton*, 587 F.3d at 1221 (quoting *United States v. Roederer*, 11 F.3d 973, 979 (10th Cir. 1993).

In this case, the drugs seized on August 22, 2018 and January 9, 2019 are temporally separated by several months and they are not similar because the drugs involved were not the same type. They are clearly not part of a single event. Therefore, they cannot be seen as being the same course of conduct.

For two or more offenses to constitute part of a *common scheme or plan*, by contrast, "they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n.5(B)(i) (first emphasis added). In this case there were no common victims, accomplices, purposes or modus operandi. Therefore, the unrelated events listed above are not part of a common scheme or plan.

Since the August 22, 2018 and January 9, 2019 drug seizures are not part of the same course or conduct or a commons scheme or plan, this court should not consider them when determining the Defendant's offense level.  In that event, the Defendant should be held responsible for 47.78 grams of methamphetamine (actual) which would establish an initial offense level of 28.

## SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE

### Mr. Reynoso's Background

Mr. Reynoso's life has been a long string of sad events.  Mr. Reynoso is a forty one year old U.S. Citizen who was born in El Paso, Texas.   He has never known his father and his mother abandoned him to the care of his grandmother at an early age.  At approximately fifteen years old, Mr. Reynoso left his grandmother's care and set out on his own.

Almost as if on cue, due to his instability at home, Mr. Reynoso dropped out of school.  He has limited education and limited work experience.  Sadly, what Mr. Reynoso does have in abundance are mental health and substance abuse issues.  While his difficult childhood is no excuse for his conduct in this matter, it surely contributed to his presence before the Court.

### The Offense and Mr. Reynoso's Role

Mr. Reynoso was found guilty of one count of distribution of 5 grams and more of methamphetamine.  The amount actually involved was approximately 44.78 grams of actual methamphetamine.  The jury found he delivered the drugs to an undercover agent in Sunland Park, New Mexico. As pointed out above, the offense level for 44.78 grams is 28.

The PSR assigns a three level increase because the Defendant was a manager or supervisor (but not an organizer or leader) taking him to offense level 31.   This analysis does not include the drugs seized on August 22, 2018 or January 9, 2019 for the reasons stated above.

It appears Mr. Reynoso has two prior convictions that qualify him as a career offender in this

3

matter which results in an offense level of 37 with a criminal history category of VI. His guidelines range based on career offender status is 360 months to life in prison.

## ARGUMENT

**This Court Should Grant a Downward Variance Based on the Sad Facts of Mr. Reynoso's Life and the Circumstances Surrounding His Robbery Conviction.**

*This Court has broad discretion grant a downward variance pursuant to 18 U.S.C. §3553(a).*

The Supreme Court made clear in Gall that, since it had declared the United States Sentencing Guidelines not mandatory but only advisory in Booker, the range of sentencing choices dictated by the facts of the case is significantly broadened. *Gall v. United States,* 128 S. Ct. 586, 602 (2007). For example, a sentencing court is free to consider factors discouraged by the guidelines, *Rita v. United States,* 127 S. Ct. 2456, 2473 (2007) (Stevens, J., concurring); *United States v. Andrews*, 447 F. 3d. 806, 811-812 & n.3 (10th Cir. 2006); *United States v. Serrata,* 425 F. 3d. 886, 918-919 (10th Cir. 2005). And a district court has considerable discretion in light of its superior vantage point to that of appellate courts and the Sentencing Commission that promulgated the guidelines. *Id*. A district court has full knowledge of the facts and greater familiarity with the individual case and the individual defendant. *Id.*

Consequently, a district court may not apply a legal presumption that a sentence within the guidelines is appropriate, *Rita* 127 S. Ct. at 2465. Rather, the guidelines are only one of the factors to consider when imposing sentence. *Id.* See also, *Kimbrough v. United States,* 128 S. Ct. 558, 564 (2007). The Guidelines serve as one factor among several, courts must consider in determining an appropriate sentence"). Sentencing courts must calculate the guideline range and "derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S. C. §3553(a)

without any thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier,* 491 F. 3d. 680, 658 (7th Cir. 2007).

The Supreme Court recently emphasized that the sentencing court's "overarching instruction" under the parsimony provision of 18 U.S.C §3553(a) "[is] to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals advanced in 18 U.S.C. §3553(a)." *Kimbrough,* 128 S. Ct at 575 (quoting 18 U.S.C. §3553 (a)). The Tenth Circuit has stressed the same precept: "[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is not impose a sentence sufficient but not greater that necessary, to comply with the purposes of 18 U.S.C. §3553(a)(2)." *United States v. Conlan,* 500 F. 3d. 1167, 1169 (10th Cir. 2007) (quoting *United States v. Wilms,* 495 F. 3d. 277, 280 (6th Cir. 2007)).

A.   *Mr. Reynoso's Life Long Personal Difficulties Warrant a Downward Variance Pursuant to 18 U.S.C. §3553(a).*

As pointed out above, Mr. Reynoso was all but abandoned to his grandmother at an early age. He quit school and was on his own by the time he was fifteen years old. He never knew his father. Clearly Mr. Reynoso lacked guidance, love, support and discipline that so many of us take for granted. He has a history of mental health issues that surely contribute to his poor decision making, and has lack of opportunity. Mr. Reynoso's life has been a recipe for disaster and that is in part what put him before the court. Although his difficult circumstances are not a legal excuse or justification for this conviction they are very strong mitigating factors the Court should consider and warrant a downward variance.

B.   *The Circumstances Surrounding Mr. Reynoso's Robbery Conviction Warrant a Downward Variance Pursuant to 18 U.S.C. §3553(a)*

The PSR asserts Mr. Reynoso is a career offender based, in part, on his robbery conviction

from El Paso.  As a career offender his guidelines range is 360 months to life in prison.  That guideline range shocks the conscience.

Paragraph 34 of the PSR correctly points out the Defendant's robbery conviction is a result of his attempt to steal $84.00 worth of meat/steak from Albertsons.  He grabbed the meat and tried to drive away.  Apparently when he tried to escape in is car he put store staff in fear of harm.

It should be noted, Mr. Reynoso did NOT brandish a firearm or other such weapon.  He did NOT stick a weapon in a person's face and demand valuables.  He tried stealing food and driving away. No one was hurt.  The loss was $84.00.  That $84.00 food theft is a contributing reason he is facing 360 months to life.

### *This Court Should Disregard the Career Offender Guidelines Sentencing Range and Sentence Mr. Reynoso to a Sentence That Reflects His Actual Conduct in this Case Only.*

*This Court has broad discretion to impose a sentence below the guideline range and a mandate to impose a sentence no greater than necessary to comply with the purposes of 18 U.S.C. §3553 (a).*

As outlined extensively above, the Guidelines are now not only advisory but are merely one aspect for the Court to consider when determining an appropriate sentence in this matter.

Mr. Reynoso's difficult upbringing and the circumstances surrounding his robbery conviction warrant a sentence below the sentencing guidelines.

For all the above reasons Mr. Reynoso respectfully request this Court sentence him at or near the mandatory minimum in this case.

On February 18, 2020 AUSA, Renee Camacho, informed the undersigned she opposes this Objection and Memorandum and the relief sought herein.

Respectfully submitted,

RUSSELL DEAN CLARK, L.L.C

_R.D. Clark_____
Russell Dean Clark
Attorney for Defendant
P.O. Box 576
Las Cruces, NM 88004
Phone: (575) 526-9000
Fax: (575) 526-9800

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing pleading was filed electronically through the CM/ECF and notice of filing has been electronically mailed to the U.S. Attorney's Office and all counsel of record, on this 19th day Of February, 2020.

_R.D. Clark_____
RUSSELL DEAN CLARK